# EXHIBIT A

12/10/2021 11:01 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 59906481
By: Joshua Hall
Filed: 12/3/2021 2:15 PM

## CAUSE NO. _____

| | | |
|---|---|---|
| **TRANSWORLD ADVERTISING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **SPB HOSPITALITY, LLC** | § | |
| | § | |
| *Defendant.* | § | **_____ JUDICIAL DISTRICT** |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff TRANSWORLD ADVERTISING, INC. ("Transworld" or "Plaintiff") files this petition complaining of Defendant SPB HOSPITALITY, LLC ("SPB" or "Defendant") and in support respectfully shows:

### I.
### PARTIES

1.     Transworld is a Florida corporation with its principal place of business in Melbourne, Florida.

2.     SPB is a Delaware limited liability company with its principal place of business in Houston, Texas, but is not properly registered in the State of Texas. SPB may be served by and through its registered agent, CT Corporation Systems at 300 Montvue Road, Knoxville, TN 37919-5546 or wherever else it may be found.

### II.
### JURISDICTION AND VENUE

3.     This Court has jurisdiction over the subject matter of this dispute because the amount in controversy exceeds this court's minimum jurisdictional requirements.

4.      Venue is proper in Harris County under Tex. Civ. Prac. Rem. Code § 15.002(a)(1) and (3) because all or a substantial part of the events or omissions giving rise to the claim occurred in Harris County and Defendant's principal office is in the State of Texas and is located in Harris County.

### III.
### DISCOVERY CONTROL PLAN

5.      Plaintiff intends to conduct discovery under Level 2 of Texas Rule of Civil Procedure 190.3 because this suit involves monetary relief exceeding $100,000.

### IV.
### FACTS

6.      Transworld offers recruitment and marketing services to businesses, primarily by advertising restaurant industry job openings. Transworld develops and implements paid advertising campaigns on internet job boards such as Indeed, Snagajob, CraigsList and Ziprecruiter.

7.      In addition, Transworld provides client support for web design, employment branding, applicant tracking system administration, hiring event process design and implementation, etc.

8.      Transworld provided these services to Defendant and related/subsidiary entities. In exchange for Transworld's services, *supra*, SPB agreed to compensate Transworld for services provided to Defendant and related/subsidiary entities.

9.      The rates and amounts for Plaintiff's services to Defendant were a novation of prior 2017 agreements with Defendant's bankrupt predecessor entities because the same individuals had been employed by both pre and post bankrupt entities.  The Defendant entity was substituted in for the preceding, bankrupt entities; while the entities changed, the people doing

business together, the compensation rates, and the tasks assigned/performed by Plaintiff remained the same.

10.     No sums are sought for services prior to the termination of the Chapter 11 proceeding, or against entities that had sought bankruptcy protection.

11.     SPB agreed to settle its account with Transworld by remitting actual amounts agreed upon by the parties given their prior course of dealing. ("Open Account"). See Exhibit A-1.

12.     For over a year from May 1, 2020 until September 30, 2021, SPB consistently and without challenge or inquiry paid the invoices in full at the at the stated amount by Plaintiff for the services provided by Transworld. The dates and amounts of SPB's payments are fully accounted for and credited to the account as reflected in Exhibit A-1.

13.     Such conduct by Defendant evidences and binds Defendant to the ratified agreement(s) with Plaintiff for services rendered for Defendant and its related entities' benefit.

14.     On October 1, 2021, Defendant terminated all business dealings with Plaintiff.

15.     Since that time, SPB has refused to pay Transworld for services previously performed, thus becoming indebted to Transworld in the sum of $263,785.09, including accrued interest. See Exhibit A.

16.     On November 1, 2021, Transworld made formal written demand on SPB for payment in full of the amount owed through that date.

17.     Defendant has failed to make any payment on the amount demanded.

### V.
### COUNT 1: SUIT ON SWORN ACCOUNT

18.     Transworld repeats and incorporates by reference the matters alleged in the preceding paragraphs.

19.     Transworld provided services to SPB on an Open Account. *See* Exhibit A-1.  In consideration of the services rendered by Transworld, on which a systematic record has been kept, SPB accepted the services and became bound and liable to pay Transworld the prices charged for the services in the amount of $263,785.09, plus interest, for which Transworld now sues.

20.     The foregoing amount is just and true and all just and lawful offsets, payments, and credits have been allowed.

21.     As a result of such failure to pay, SPB is also liable for all collection costs incurred by Transworld, including its reasonable and necessary attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(7).

**VI.**
**COUNT 2: BREACH OF CONTRACT**

22.     Transworld repeats and incorporates by reference the matters alleged in the preceding paragraphs.

23.     Transworld provided services to SPB pursuant to binding agreements between the parties. Transworld fully performed all its obligations under the contract(s), orally or otherwise, and SPB accepted all services rendered.

24.     All conditions precedent from the agreement(s) of the parties to form the contract(s), orally or otherwise, and to create SPB's contractual liability have occurred or been performed.

25.     By reason of SPB's failure to pay for the services provided by Transworld, SPB has breached the contract(s) with Transworld.  As a result of SPB's breach, Transworld has been

injured and is entitled to recover the amount of $263,785.09, plus interest.

26.     As a result of such breach, SPB is also liable for all attorneys reasonable and necessary attorneys' fees incurred by Transworld pursuant to Tex. Civ. Prac. & Rem. Code § 38.001(8).

## VII.
## COUNT 3: QUANTUM MERUIT

27.     Transworld repeats and incorporates by reference the matters alleged in the preceding paragraphs.

28.     In the alternative, Transworld is entitled to recover in *quantum meruit* because SPB, with full knowledge and consent, received the benefits of the services provided by Transworld at SPB's request and insistence.  Accordingly, SPB is required to pay a reasonable fee for the benefits conferred and accepted, which is a sum no less than $263,785.09.

## VIII.
## COUNT 4: UNJUST ENRICHMENT[1]

29.     Transworld repeats and incorporates by reference the matters alleged in the preceding paragraphs.

30.     Throughout the course of this arrangement, SPB received applications for the services provided by Transworld. These candidates were directed into SPB's Applicant Tracking System where managers were able to review candidates, interview and hire.

---

[1] From a NY perspective, unjust enrichment is duplicative of quantum meruit.  As such, it opens up a stalling/drive up fees opportunity for a motion to dismiss.  I'm not sure it adds anything.  That said, if there is a TX difference let's move forward.

31.    In the alternative, Transworld is entitled to recover under a theory of unjust enrichment because SPB, with the intent not to pay or otherwise take undue advantage, received the benefits of the services provided by Transworld at SPB's request and insistence. Accordingly, SPB is required to pay a reasonable fee for the benefits conferred and accepted, which is a sum no less than $263,785.09.

32.    Transworld is also entitled to an unjust enrichment recovery for Defendants use of its proprietary advertisement intellectual property since November 1, 2021 in continuing the Program with Indeed without Plaintiff.

### IX.
### COUNT 5: ATTORNEY'S FEES

33.    Transworld retained counsel to collect the claim and has agreed to pay a reasonable fee to the attorney. Counsel presented Transworld's claim to SPB and/or SPB's duly authorized agent, and SPB did not tender the amount owed within 30 days after the claim was presented.  Accordingly, Transworld is entitled to recover reasonable attorney's fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001.

### X.
### PRAYER FOR RELIEF

Therefore, Plaintiff Transworld. respectfully requests that Defendant SPB be cited to appear and answer, and that on final disposition, the court award plaintiff the following relief:

   a.    Damages in the amount due of $263,785.09;

   b.    Pre-judgment interest at the maximum rates allowed by law;

   c.    Post-judgment interest at the maximum rates allowed by law;

   d.    Reasonable and necessary attorneys' fees incurred herein and in all subsequent appeals;

   e.    Reasonable costs of court and expenses incurred in this cause, plus any fees, costs, or expense incurred in any appeal of this matter; and

   f.    Any other relief to which Transworld is entitled.

Dated: December 3, 2021                Respectfully submitted,

**VANACOUR PERKINS PLLC**


   ___*S/ KEVIN PERKINS*_____

Kevin Perkins
State Bar No. 24053420
kperkins@vanacourperkins.com
Jason Vanacour
State Bar No. 24073250
jvanacour@vanacourperkins.com
5851 Legacy Circle, Suite 600
Plano, Texas 75024
Phone: (972) 865-6034
Fax: (972) 692-0509

**ATTORNEY FOR PLAINTIFF**

2/10/2022 1:10 PM
Marilyn Burgess - District Clerk Harris County
Envelope No. 61630214
By: Lisa Thomas
Filed: 2/10/2022 1:10 PM

## CAUSE NO. 202180561

| | | |
|---|---|---|
| **TRANSWORLD ADVERTISING, INC.** | § | **IN THE DISTRICT COURT OF** |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| **v.** | § | |
| | § | **HARRIS COUNTY, TEXAS** |
| | § | |
| **SPB HOSPITALITY, LLC** | § | |
| | § | |
| *Defendant.* | § | **61st JUDICIAL DISTRICT** |

## PLAINTIFF'S REQUEST FOR CITATION

Plaintiff TRANSWORLD ADVERTISING, INC. ("Transworld" or "Plaintiff") files this

PLAINTIFF'S REQUEST FOR CITATION in the above referenced matter.

### PRAYER FOR RELIEF

Therefore, Plaintiff Transworld respectfully requests that the Court issue citations in this

matter and grant any other relief to which Transworld is entitled.

Dated: February 10, 2022                    Respectfully submitted,

                                            **VANACOUR PERKINS PLLC**


                                               **S/ *KEVIN PERKINS***
                                            Kevin Perkins
                                            State Bar No. 24053420
                                            Jason Vanacour
                                            State Bar No. 24073250
                                            5851 Legacy Circle, Suite 600
                                            Plano, Texas 75024
                                            Phone: (972) 865-6034
                                            Fax: (972) 692-0509

                                            **ATTORNEY FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing document was served by e-service on all required parties under the Texas Rules of Civil Procedure on the 10th day of February 2022.

<u>**s/ Kevin Perkins**</u>
Kevin Perkins

3/11/2022 9:44 AM
Marilyn Burgess - District Clerk Harris County
Envelope No. 62519956
By: Tiffany Jefferson
Filed: 3/11/2022 9:44 AM

CAUSE NO. 2021-80561

| | | |
|---|---|---|
| TRANSWORLD ADVERTISING, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| SPB HOSPITALITY, LLC, | § | |
| *Defendant/Counter-Plaintiff.* | § | 61ST JUDICIAL DISTRICT |

### SPB HOSPITALITY, LLC'S ORIGINAL ANSWER, VERIFIED DENIAL, AND ORIGINAL COUNTERCLAIM

COMES NOW, Defendant and Counter-Plaintiff, SPB HOSPITALITY, LLC ("SPB"), in the above-captioned lawsuit, and files this Original Answer, Verified Denial, and Original Counterclaim, and SPB would show unto the Court the following:

### GENERAL DENIAL

1.      Pursuant to TEXAS RULE OF CIVIL PROCEDURE 92, SPB denies each and every, all and singular, the material allegations contained in Plaintiff and Counter-Defendant, TRANSWORLD ADVERTISING, INC.'s ("Transworld") pleadings filed herein, and SPB demands strict proof thereof, as required by the laws of the State of Texas.

### VERIFIED DENIAL[1]

2.      Pursuant to TEXAS RULE OF CIVIL PROCEDURE 185, SPB denies, under oath, that the factual allegations plead by Transworld in its Original Petition in support of its suit on a sworn account claim, under Rule 185, are just and true, as specifically identified and denied herein.

3.      SPB denies the account on which Transworld files suit because not every item of the account is just or true.

4.      SPB denies the account on which Transworld files suit because the claim is not due.

---

[1] *See* Affidavit of Maria Dawson, attached hereto as Exhibit "A."

5.      SPB denies the account on which Transworld files suit because Transworld has not credited SPB's account with all just and lawful offsets, payments, and other credits.

6.      SPB denies the account on which Transworld files suit because the amount Transworld claims is due is incorrect.

7.      SPB denies the account on which Transworld files suit because Transworld charged SPB for the alleged services that are not in accordance with the parties' agreement and are unreasonable.

8.      Specifically, the invoices Transworld relies on in support of its suit on a sworn account claim are not valid because: (1) the alleged services referenced in the invoices were not approved by SPB, (2) the invoices failed to specify locations where the alleged services were rendered or provided, (3) the invoices failed to specify who at SPB requested or approved the services that were allegedly rendered or provided by Transworld, (4) many of the invoices reflect charges for alleged services that are not reasonably priced for what was allegedly being provided, and (5) many of the invoices also reflect charges that were billed to SPB under one category and then billed again to SPB under another category.

9.      As such, Transworld's assertion that "The foregoing amount is just and true and all just and lawful offsets, payments, and credits have been allowed," is untrue.

## AFFIRMATIVE DEFENSES

10.     SPB pleads the following affirmative defenses to Transworld's Original Petition, and any supplements or amendments thereto, but SPB does not assume the burden of proof on any such affirmative defenses, except as otherwise required by law.  SPB reserves the right to assert new or additional defenses or affirmative defenses and to otherwise supplement or amend its Original Answer, as new or additional information or documentation becomes available through

discovery.  Each of the following affirmative defenses are plead in the alternative, as all liability is generally denied.

11.     Pleading further, if such pleading is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, Transworld's claims are barred, in whole or in part, by the doctrine of illegality, thus rendering any agreement or contract, upon which Transworld relies in support of its claims for damages, void and unenforceable.  Specifically, and upon information and belief, the Agency Support & Career Site Maintenance Agreement ("Agreement"), which is attached as Exhibit "B," is unenforceable because the invoices Transworld relies on in support of its claims are not valid because: (1) the alleged services referenced in the invoices were not approved by SPB, (2) the invoices failed to specify locations where the alleged services were rendered or provided, (3) the invoices failed to specify who at SPB requested or approved the services that were allegedly rendered or provided by Transworld, (4) many of the invoices reflect charges for alleged services that are not reasonably priced for what was allegedly being provided, and (5) many of the invoices also reflect charges that were billed to SPB under one category and then billed again to SPB under another category.

12.     Pleading further, if such pleading is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, SPB asserts that in the unlikely event it is found liable to Transworld, Transworld's claims are barred in whole or in part based on Transworld's fraud.  Specifically, and upon information and belief, the invoices Transworld relies on in support of its claims are not valid because: (1) the alleged services referenced in the invoices were not approved by SPB, (2) the invoices failed to specify locations where the alleged services were rendered or provided, (3) the invoices failed to specify who at SPB requested or approved the services that were allegedly rendered or provided by Transworld, (4) many of the invoices

reflect charges for alleged services that are not reasonably priced for what was allegedly being provided, and (5) many of the invoices also reflect charges that were billed to SPB under one category and then billed again to SPB under another category.

13.     Pleading further, if such pleading is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, SPB asserts that in the unlikely event it is found liable to Transworld, Transworld's claims are barred, in whole or in part, by the doctrine of unclean hands and/or estoppel.

14.     Pleading further, if such pleading is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, SPB asserts that in the unlikely event it is found liable to Transworld, Transworld's claims are barred, in whole or in part, because Transworld has not sustained any damages.

15.     Pleading further, if such pleading is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, SPB asserts that in the unlikely event it is found liable to Transworld, Transworld's claims are barred, in whole or in part, pursuant to accord and satisfaction.

16.     Pleading further, if such pleading is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, SPB asserts that in the unlikely event it is found liable to Transworld, to the extent an actionable agreement or contract exists between SPB and Transworld, or is established in whole or in part, any duty or performance of SPB is excused by reason of acceptance by Transworld.

17.     Pleading further, if such pleading is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, SPB asserts that in the unlikely

event it is found liable to Transworld, Transworld's claims are barred because Transworld failed to act, at all times, in good faith and fair dealing.

18.     Pleading further, if such pleading is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, SPB asserts that in the unlikely event it is found liable to Transworld, Transworld's claims are barred, in whole or in part, by the doctrine of ratification.

19.     Pleading further, if such pleading is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, SPB asserts that in the unlikely event it is found liable to Transworld, SPB is entitled to a credit or offset for any and all sums Transworld has received or may hereafter receive from SPB.

20.     Pleading further if such is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, in the unlikely event Transworld recovers an award of pre-judgment interest for un-accrued damages, such an award would violate the following provisions, among others, of the Constitution of the State of Texas and the U.S. Constitution: (i) Trial by Jury, TEX. CONST. ART. I, 15; (ii) Due Process, U.S. CONST. AMEND. V and XIV; (iii) TEX. CONST. Art. I 13; and (iv) Constitutional Rights are Inviolate, TEX. CONST. Art. I, 28.  Further, SPB pleads the limitations for pre-judgment interest, as set forth in the TEXAS FINANCE CODE.

21.     Pleading further, if such pleading is necessary, and without admitting liability or responsibility, all of which is generally and specifically denied, SPB asserts that in the unlikely event it is found liable to Transworld, Transworld's claims are barred, in whole or in part, because of Transworld's breach of the parties' Agreement regarding payment terms for the alleged debt.

**RIGHT TO SUPPLEMENT**

22.     SPB respectfully reserves the right to supplement or amend this Original Answer, after it has had the opportunity to more closely investigate Transworld's claims, as is the right and privilege of SPB under the TEXAS RULES OF CIVIL PROCEDURE and the laws of the State of Texas.

**NOTICE OF USE**

23.     SPB hereby gives actual notice to Transworld that any and all documents produced during discovery may be used against Transworld at any pre-trial proceeding and/or during the trial of this matter without the necessity of authenticating the document.  This notice is given pursuant to TEXAS RULE OF CIVIL PROCEDURE 193.7.

**SPB'S ORIGINAL COUNTERCLAIM**

**PARTIES**

1.     Defendant and Counter-Plaintiff, SPB HOSPITALITY, LLC ("SPB"), by and through its undersigned counsel, hereby files this Original Counterclaim ("Counterclaim") against Plaintiff and Counter-Defendant, TRANSWORLD ADVERTISING, INC. ("Transworld"), and in so doing, states as follows:

2.     SPB is a limited liability company, organized under the laws of the State of Delaware, with its principal place of business in Houston, Texas.  As stated in its Original Petition, Transworld is a corporation, organized under the laws of the State of Florida, with its principal place of business in Melbourne, Florida.

**JURSIDICTION AND VENUE**

3.     SPB's Counterclaim seeks relief under common law and statute against Transworld pursuant to the following: (1) breach of contract, (2) *quantum meruit*, (3) conversion, (4) civil theft liability, (5) declaratory relief, (6) fraud, and (7) negligent misrepresentation.

4.      SPB asserts that the United States District Court for the Southern District of Texas, Houston Division, has subject matter jurisdiction over this controversy because the amount in controversy exceeds the sum of $75,000.00, and the controversy is between the citizens of two different states, and therefore, SPB is filing a Notice of Removal, pursuant to 28 U.S.C. § 1332, contemporaneously with the filing of this pleading.

5.      SPB further asserts that venue is proper in the United States District Court for the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. § 1391, because the United States District Court for the Southern District of Texas, Houston Division, embraces the place in which this state-court action is currently pending, and also because several of the acts giving rise to the state-court action occurred in the United States District Court for the Southern District of Texas, Houston Division.

## GENERAL ALLEGATIONS

6.      SPB is a leading operator and franchisor of full-service dining restaurants, spanning a national footprint of hundreds of restaurants and breweries.  SPB's diverse portfolio of restaurant brands includes Logan's Roadhouse, J Alexander's, Stoney River, Old Chicago Pizza & Taproom, and a collection of restaurant-brewery brands, including Rock Bottom Restaurant & Brewery and Gordon Biersch Brewery Restaurant.  SPB also operates a collection of specialty restaurant concepts including ChopHouse & Brewery, Big River Grille & Brewing Works, AIA Ale Works Restaurant & Taproom, Ragtime Tavern Seafood & Grill, and Seven Bridges Grille & Brewery.

7.      On June 11, 2020, SPB purchased, out of bankruptcy, several of the above-described business operations from CraftWorks Holdings, Inc. ("CraftWorks"), after CraftWorks closed its owned-and-operated locations on or about March of 2020, after a Chapter 11 Bankruptcy, followed immediately by the COVID-19 pandemic in the United States.

8.      According to its Original Petition, Transworld offers recruitment and marketing services to businesses, primarily by advertising restaurant industry job openings, and further, Transworld purportedly develops and implements paid advertising campaigns on internet job boards, such as Indeed, Snagajob, Craigslist, and ZipRecruiter.  As further alleged in its Original Petition, Transworld also purportedly provides client support for web design, employment branding, applicant tracking system administration, and hiring event process design and implementation.

9.      Prior to its Chapter 11 Bankruptcy, Transworld provided the above-described services to CraftWorks.

10.      On or about December 30, 2020, SPB and Transworld entered into an Agency Support & Career Site Maintenance Agreement ("Agreement"), whereby Transworld agreed to provide the above-described services to SPB, beginning on January 1, 2021, and lasting for a period of 12 months.  A copy of the Agreement is attached as Exhibit "B."

11.      Beginning in April of 2020, and ending in August of 2020, Transworld submitted a series of invoices to SPB for payment for services that had allegedly been rendered or provided by Transworld pursuant to the Agreement.  Initially believing that these invoices were accurate and were for work or services that had actually been rendered or provided by Transworld pursuant to the Agreement, SPB made timely payments to Transworld.  Unfortunately, and upon further investigation by SPB, it was later revealed that many of the invoices that were submitted by Transworld to SPB for work that had allegedly been rendered or provided by Transworld, and paid for by SPB, were not valid.

12.      More specifically, through its investigation, SPB discovered that many of the invoices submitted by Transworld were not valid because: (1) the alleged services referenced in

8

the invoices were not approved by SPB, (2) the invoices failed to specify locations where the alleged services were rendered or provided, (3) the invoices failed to specify who at SPB requested or approved the services that were allegedly rendered or provided by Transworld, (4) many of the invoices reflect charges for alleged services that are not reasonably priced for what was allegedly being provided, and (5) many of the invoices also reflected charges that were billed to SPB under one category and then billed again to SPB under another category.

## **FIRST COUNTERCLAIM – BREACH OF CONTRACT**

13.      SPB re-alleges and re-incorporates the allegations contained in Paragraphs 1 to 12, as if fully set forth herein.

14.      As more thoroughly described above, Transworld breached the Agreement with SPB.

15.      On or about December 30, 2020, SPB and Transworld entered into the Agreement. SPB attaches a copy of the Agreement as Exhibit "B" and incorporates it by reference, as if fully set forth herein.  The Agreement provided that SPB would, among other things, make payments to Transworld within 30 days of receipt an invoice, and that Transworld would only submit invoices for services that were actually rendered or performed pursuant to the terms of the Agreement.

16.      SPB fully performed, or was excused from performing, its contractual obligations, which were outlined in the Agreement.

17.      Transworld breached the Agreement by submitting invalid invoices to SPB.  More specifically, through its investigation, SPB discovered that many of the invoices submitted by Transworld were not valid because: (1) the alleged services referenced in the invoices were not approved by SPB, (2) the invoices failed to specify locations where the alleged services were

rendered or provided, (3) the invoices failed to specify who at SPB requested or approved the services that were allegedly rendered or provided by Transworld, (4) many of the invoices reflect charges for alleged services that are not reasonably priced for what was allegedly being provided, and (5) many of the invoices also reflected charges that were billed to SPB under one category and then billed again to SPB under another category.

18.     Transworld's breach caused injury to SPB, which resulted in the following damages: $393,882.16.

19.     SPB seeks liquidated damages in the amount of at least $393,882.16, which is within the jurisdictional limits of this Court.

20.     WHEREFORE, SPB requests that the Court enter judgment in its favor and against Transworld, and in so doing, award SPB all available compensatory damages available pursuant to common law and statute, including, but not limited to, disgorgement of all ill-gotten gains of Transworld, lost profits of SPB, pre- and post-judgment interest, attorney's fees, and all costs and expenses associated with this Counterclaim.

## <u>SECOND COUNTERCLAIM – *QUANTUM MERUIT*</u>

21.     SPB re-alleges and re-incorporates the allegations contained in Paragraphs 1 to 12, as if fully set forth herein.

22.     SPB provided Transworld with multiple payments, which totaled $393,882.16, for invalid invoices that were submitted to SPB by Transworld.  More specifically, through its investigation, SPB discovered that many of the invoices submitted by Transworld to SPB were not valid because: (1) the alleged services referenced in the invoices were not approved by SPB, (2) the invoices failed to specify locations where the alleged services were rendered or provided, (3) the invoices failed to specify who at SPB requested or approved the services that were allegedly

rendered or provided by Transworld, (4) many of the invoices reflect charges for alleged services that are not reasonably priced for what was allegedly being provided, and (5) many of the invoices also reflected charges that were billed to SPB under one category and then billed again to SPB under another category.  Transworld accepted payment of $393,882.16, which was based on the invalid invoices that were submitted by Transworld to SPB.

23.     SPB provided Transworld with payment, which totaled $393,882.16, for Transworld's benefit.  At the time when SPB made its timely payments to Transworld, it initially believed that the invoices were accurate and were for work or services that had actually been rendered or provided by Transworld pursuant to the Agreement.  Unfortunately, and upon further investigation by SPB, it was later revealed that many of the invoices that were submitted by Transworld to SPB for work that had allegedly been rendered or provided by Transworld, and paid for by SPB, were not valid.

24.     Transworld knew or should have known that SPB expected to only make payments to Transworld for work or services that had actually been rendered or provided by Transworld pursuant to the Agreement.  Transworld further knew or should have known that SPB expected to only make payments to Transworld: (1) for services that were approved by SPB, (2) at specified locations, (3) for services that were actually requested or approved by SPB, (4) for services that were reasonably priced for what was allegedly being provided, and (5) that Transworld would only billed to SPB under one category and then not bill SPB again under another category for the same work or services.

25.     Because SPB expected that it was paying Transworld only for work or services that were actually rendered or provided by Transworld, Transworld's acceptance of the payment of

$393,882.16 for work or services, which were not actually rendered or performed by Transworld, resulted in the following damages to SPB: $393,882.16.

26.      SPB seeks damages within the jurisdictional limits of this Court.

27.      WHEREFORE, SPB requests that the Court enter judgment in its favor and against Transworld, and in so doing, award SPB all available compensatory damages available pursuant to common law and statute, including, but not limited to, disgorgement of all ill-gotten gains of Transworld, lost profits of SPB, pre- and post-judgment interest, attorney's fees, and all costs and expenses associated with this Counterclaim.

## THIRD COUNTERCLAIM – CONVERSION

28.      SPB re-alleges and re-incorporates the allegations contained in Paragraphs 1 to 12, as if fully set forth herein.

29.      SPB had a right to immediate possession of the following personal property: $393,882.16.

30.      Transworld wrongfully acquired and exercised dominion and control over SPB's personal property.  Specifically, Transworld submitted invalid invoices to SPB.  More specifically, through its investigation, SPB discovered that many of the invoices submitted by Transworld to SPB were not valid because: (1) the alleged services referenced in the invoices were not approved by SPB, (2) the invoices failed to specify locations where the alleged services were rendered or provided, (3) the invoices failed to specify who at SPB requested or approved the services that were allegedly rendered or provided by Transworld, (4) many of the invoices reflect charges for alleged services that are not reasonably priced for what was allegedly being provided, and (5) many of the invoices also reflected charges that were billed to SPB under one category and then billed again to SPB under another category.  Transworld's acts amounted to a clear repudiation of SPB's

rights.  More specifically, Transworld submitted invalid invoices to SPB, and then Transworld accepted $393,882.16 in payment from SPB for the invalid invoices.

31.      Transworld's wrongful acts proximately caused injury to SPB, which resulted in the following damages: liquidated damages in the amount of $393,882.16, loss of use of the converted property, and loss of profits from the converted property.

32.      SPB seeks return of the converted property and damages within the jurisdictional limits of this Court.

33.      SPB's injury resulted from Transworld's malice, which entitles SPB to exemplary damages under TEXAS CIVIL PRACTICE & REMEDIES CODE § 41.003(a)(2).   Specifically, Transworld knew that the invoices it submitted to SPB for payment were invalid, and then accepted payment from SPB for invoices that Transworld knew were invalid.

34.      WHEREFORE, SPB requests that the Court enter judgment in its favor and against Transworld, and in so doing, award SPB all available compensatory and exemplary damages available pursuant to common law and statute, including, but not limited to, disgorgement of all ill-gotten gains of Transworld, lost profits of SPB, pre- and post-judgment interest associated with this Counterclaim.

## <u>FOURTH COUNTERCLAIM – CIVIL THEFT LIABILITY</u>

35.      SPB re-alleges and re-incorporates the allegations contained in Paragraphs 1 to 12, as if fully set forth herein.

36.      SPB brings this action under the Texas Civil Theft Liability Act for an unlawful appropriation of property under TEXAS PENAL CODE § 31.03.

37.    SPB is entitled to possession of the personal property, in the amount of $393,882.16, which SPB timely paid to Transworld following the receipt of Transworld's invalid invoices.

38.    Transworld unlawfully appropriated SPB's personal property, in the amount of $393,882.16, in violation of TEXAS PENAL CODE § 31.03.   More specifically, through its investigation, SPB discovered that many of the invoices submitted by Transworld to SPB were not valid because: (1) the alleged services referenced in the invoices were not approved by SPB, (2) the invoices failed to specify locations where the alleged services were rendered or provided, (3) the invoices failed to specify who at SPB requested or approved the services that were allegedly rendered or provided by Transworld, (4) many of the invoices reflect charges for alleged services that are not reasonably priced for what was allegedly being provided, and (5) many of the invoices also reflected charges that were billed to SPB under one category and then billed again to SPB under another category.

39.    Transworld's unlawful appropriation was made with the intent to deprive SPB of the property.   More specifically, Transworld submitted invalid invoices to SPB, and then Transworld accepted $393,882.16 in payment from SPB for the invalid invoices.

40.    Transworld's wrongful conduct caused injury to SPB, which resulted in the following damages: More specifically, Transworld submitted invalid invoices to SPB, and then Transworld accepted $393,882.16.

41.    Upon proof of actual damages, SPB is entitled to additional statutory damages of up to $1,000.00 from Transworld under TEXAS CIVIL PRACTICE & REMEDIES CODE § 134.005(a)(1).

42.    SPB seeks damages within the jurisdictional limits of this Court.

43.     SPB's injury resulted from Transworld's malice or actual fraud, which entitles SPB to exemplary damages under TEXAS CIVIL PRACTICE & REMEDIES CODE § 41.003(a).  Specifically, Transworld knew that the invoices it submitted to SPB for payment were invalid, and then accepted payment from SPB for invoices that Transworld knew were invalid.

44.     SPB's injury resulted from Transworld's felony theft in the third degree or higher under the Texas Penal Code that was committed knowingly or intentionally, which exempts this claim from the cap on exemplary damages under TEXAS CIVIL PRACTICE & REMEDIES CODE § 41.008(c).

45.     SPB is entitled to recover court costs under TEXAS CIVIL PRACTICE & REMEDIES CODE § 134.005(b).

46.     WHEREFORE, SPB requests that the Court enter judgment in its favor and against Transworld, and in so doing, award SPB all available compensatory and exemplary damages available pursuant to Texas common law and statute, including, but not limited to, disgorgement of all ill-gotten gains of Transworld, lost profits of SPB, pre- and post-judgment interest, attorney's fees, and all costs and expenses associated with this Counterclaim.

## FIFTH COUNTERCLAIM – DECLARATORY RELIEF

47.     SPB re-alleges and re-incorporates the allegations contained in Paragraphs 1 to 12, as if fully set forth herein.

48.     There is a present and existing good-faith dispute between SPB and Transworld concerning SPB's rights and obligations under the Agreement, and whether SPB owes any damages to Transworld under the Agreement.

49.     Accordingly, this is a claim for declaratory relief by SPB, pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE § 37.001, for the purpose of determining SPB's rights and obligations under the Agreement.

50.     SPB seeks declarations that: (1) the invoices are invalid; and (2) SPB owes no damages to Transworld under the Agreement.

51.     WHEREFORE, SPB requests that the Court enter judgment in its favor and against Transworld, and in so doing, award SPB all available compensatory damages available pursuant to common law and statute, including, but not limited to, disgorgement of all ill-gotten gains of Transworld, lost profits of SPB, pre- and post-judgment interest, attorney's fees, and all costs and expenses associated with this Counterclaim.

## SIXTH COUNTERCLAIM – FRAUD

52.     SPB re-alleges and re-incorporates the allegations contained in Paragraphs 1 to 12, as if fully set forth herein.

53.     Transworld represented to SPB that Transworld was only submitting invoices to SPB: (1) for work or services that were approved by SPB, (2) at specified locations, (3) for work or services that were actually requested or approved by SPB, (4) for work or services that were reasonably priced for what was allegedly being provided, and (5) that Transworld would only bill SPB under one category and then not bill SPB again under another category for the same work or services.

54.     Transworld's representations to SPB were material because they were the basis for the payment for the work or services provided by Transworld pursuant to the Agreement between Transworld and SPB.

55.     Transworld's representations through the invoices that were submitted to SPB were false statements of fact because: (1) the alleged services referenced in the invoices were not approved by SPB, (2) the invoices failed to specify locations where the alleged services were rendered or provided, (3) the invoices failed to specify who at SPB requested or approved the services that were allegedly rendered or provided by Transworld, (4) many of the invoices reflect charges for alleged services that are not reasonably priced for what was allegedly being provided, and (5) many of the invoices also reflected charges that were billed to SPB under one category and then billed again to SPB under another category.

56.     Transworld made the false representations knowing they were false.  Specifically, Transworld knew that the invoices it submitted to SPB for payment were invalid, and then accepted payment from SPB for invoices that Transworld knew were invalid.

57.     Transworld intended for SPB to rely on, or had reason to expect that SPB would act in reliance on, the false representations.  Specifically, Transworld knew that the invoices it submitted to SPB for payment were invalid, and then accepted payment from SPB for invoices that Transworld knew were invalid.

58.     SPB justifiably relied on Transworld's false representations when SPB initially believed that the invoices were accurate and were for work or services that had actually been rendered or provided by Transworld pursuant to the Agreement.  SPB made timely payments to Transworld under this belief.  Unfortunately, and upon further investigation by SPB, it was later revealed that many of the invoices that were submitted by Transworld to SPB for work that had allegedly been rendered or provided by Transworld, and paid for by SPB, were not valid.

59.     Transworld's false representations directly and proximately caused injury to SPB, which resulted in the following damages: $393,882.16.

60. SPB seeks damages within the jurisdictional limits of this Court.

61. SPB's injury resulted from Transworld's actual fraud, gross negligence, or malice, which entitles SPB to exemplary damages under TEXAS CIVIL PRACTICE & REMEDIES CODE § 41.003(a). Specifically, Transworld knew that the invoices it submitted to SPB for payment were invalid, and then accepted payment from SPB for invoices that Transworld knew were invalid.

62. WHEREFORE, SPB requests that the Court enter judgment in its favor and against Transworld, and in so doing, award SPB all available compensatory and exemplary damages available pursuant to common law and statute, including, but not limited to, disgorgement of all ill-gotten gains of Transworld, lost profits of SPB, and pre- and post-judgment interest associated with this Counterclaim.

## SEVENTH COUNTERCLAIM – NEGLIGENT MISREPRESENTATION

63. SPB re-alleges and re-incorporates the allegations contained in Paragraphs 1 to 12, as if fully set forth herein.

64. Transworld represented to SPB that Transworld was only submitting invoices to SPB: (1) for work or services that were approved by SPB, (2) at specified locations, (3) for work or services that were actually requested or approved by SPB, (4) for work or services that were reasonably priced for what was allegedly being provided, and (5) that Transworld would only bill SPB under one category and then not bill SPB again under another category for the same work or services.

65. Transworld made the representations in the course of its business with SPB, which were outlined in the Agreement.

66.     Transworld made the representations for the guidance of others.  More specifically, Transworld made the representations to SPB Transworld was only submitting invoices to SPB: (1) for work or services that were approved by SPB, (2) at specified locations, (3) for work or services that were actually requested or approved by SPB, (4) for work or services that were reasonably priced for what was allegedly being provided, and (5) that Transworld would only bill SPB under one category and then not bill SPB again under another category for the same work or services.

67.     Transworld's representations were misstatements of fact.  Specifically, Transworld should have known that the invoices it submitted to SPB for payment were likely invalid.

68.     Transworld did not use reasonable care in communicating the information to SPB.

69.     SPB actually and justifiably relied on Transworld's representations when SPB initially believed that the invoices were accurate and were for work or services that had actually been rendered or provided by Transworld pursuant to the Agreement.  In fact, SPB made timely payments to Transworld under this mistaken belief.  Unfortunately, and upon further investigation by SPB, it was later revealed that many of the invoices that were submitted by Transworld to SPB for work that had allegedly been rendered or provided by Transworld, and paid for by SPB, were not valid.

70.     Transworld's misrepresentations proximately caused injury to SPB, which resulted in the following damages: $393,882.16.

71.     SPB seeks damages within the jurisdictional limits of this Court.

72.     SPB's injury resulted from Transworld's gross negligence, which entitles SPB to exemplary damages under TEXAS CIVIL PRACTICE & REMEDIES CODE § 41.003(a)(3).  Specifically, Transworld acted with conscious disregard when it submitted the invalid invoices to SPB for

payment, and then accepted payment from SPB for invoices that Transworld should have known were invalid, were it not for Transworld's conscious indifference to the validity of the invoices.

73.     WHEREFORE, SPB requests that the Court enter judgment in its favor and against Transworld, and in so doing, award SPB all available compensatory and exemplary damages available pursuant to common law and statute, including, but not limited to, disgorgement of all ill-gotten gains of Transworld, lost profits of SPB, and pre- and post-judgment interest associated with this Counterclaim.

## ATTORNEY'S FEES

74.     SPB is entitled to recover reasonable and necessary attorney's fees from Transworld, pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE § 38.001(b)(8), because this is a suit for breach of a written contract.

75.     SPB is entitled to recover reasonable and necessary attorney's fees from Transworld, pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE § 38.001(b)(1)-(3), because this is a suit for *quantum meruit*.

76.     SPB is entitled to recover reasonable and necessary attorney's fees from Transworld, pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE § 134.005(b), because this is a suit for civil theft liability.

77.     SPB is entitled to recover reasonable and necessary attorney's fees from Transworld, pursuant to TEXAS CIVIL PRACTICE & REMEDIES CODE § 37.009, because this is a suit for declaratory judgment.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, SPB HOSPITALITY, LLC respectfully requests that, after notice and hearing, the Court enter a take-nothing judgment in its favor, that it

go hence without delay for costs, and for such other and further relief, both special and general, at

law and in equity, and any and all other relief to which it may show itself to be justly entitled.  SPB

HOSPITALITY, LLC further prays that judgment be entered in its favor and against Transworld

regarding SPB HOSPITALITY, LLC's Original Counterclaim, and for all other relief to which

SPB HOSPITALITY, LLC may be entitled at law or equity.

Respectfully submitted,

**GORDON REES SCULLY MANSUKHANI LLP**

By: */s/ Philip Robert Brinson*
       Philip Robert Brinson
       State Bar No. 00787139
       TransWestern Tower
       1900 West Loop South, Suite 1000
       Houston, Texas 77027
       (713) 490-4834 (Telephone)
       (713) 961-3938 (Facsimile)
       prbrinson@grsm.com

**ATTORNEY FOR DEFENDANT AND
COUNTER-PLAINTIFF,
SPB HOSPITALITY, LLC**

**<u>CERTIFICATE OF SERVICE</u>**

I certify that a true and correct copy of the foregoing instrument was served on all parties and/or their counsel of record in accordance with the TEXAS RULES OF CIVIL PROCEDURE on March 11, 2022.

*/s/ Philip Robert Brinson*
Philip Robert Brinson

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system.
The filer served this document via email generated by the efiling system
on the date and to the persons listed below. The rules governing
certificates of service have not changed. Filers must still provide a
certificate of service that complies with all applicable rules.

Gloria Flores on behalf of Philip Brinson
Bar No. 787139
gflores@grsm.com
Envelope ID: 62519956
Status as of 3/11/2022 9:58 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Philip RobertBrinson | | prbrinson@grsm.com | 3/11/2022 9:44:09 AM | SENT |
| Gloria E.Flores | | gflores@grsm.com | 3/11/2022 9:44:09 AM | SENT |
| Kyle M.Smith | | kmsmith@grsm.com | 3/11/2022 9:44:09 AM | SENT |
| Kevin Perkins | | kperkins@vanacourperkins.com | 3/11/2022 9:44:09 AM | SENT |
| Jason Vanacour | | jvanacour@vanacourperkins.com | 3/11/2022 9:44:09 AM | SENT |

# EXHIBIT A

CAUSE NO. 2021-80561

| | | |
|---|---|---|
| TRANSWORLD ADVERTISING, INC., | § | IN THE DISTRICT COURT OF |
| *Plaintiff/Counter-Defendant,* | § | |
| | § | |
| v. | § | HARRIS COUNTY, TEXAS |
| | § | |
| SPB HOSPITALITY, LLC, | § | |
| *Defendant/Counter-Plaintiff.* | § | 61ST JUDICIAL DISTRICT |

## <u>AFFIDAVIT OF MARIA DAWSON</u>

| | |
|---|---|
| **STATE OF INDIANA** | § |
| | § |
| **COUNTY OF LAKE** | § |

Before me, the undersigned Notary, on this day personally appeared MARIA DAWSON, the Affiant, whose identity is known to me.  After I administered an oath, the Affiant testified, as follows:

1. "My name is Maria Dawson.  I am over 18 years of age, I am of sound mind, and I am capable of making this Affidavit.  The facts stated in this Affidavit are within my personal knowledge and are true and correct.

2. I am the Human Resources Director for Defendant and Counter-Plaintiff, SPB HOSPITALITY, LLC ("SPB").

3. I acquired personal knowledge of the facts stated in this Affidavit by personally reviewing and analyzing the account and the invoices that were provided by Plaintiff and Counter-Defendant, TRANSWORLD ADVERTISING, INC. ("Transworld") to SPB.

4. I have read SPB's Original Answer, Verified Denial, and Original Counterclaim, and the facts stated therein are within my personal knowledge and are true and correct.

5. The account on which Transworld files suit is denied because not every item of the account is just or true.

6. The account on which Transworld files suit is denied because the claim is not due.

7. The account on which Transworld files suit is denied because Transworld has not credited SPB's account with all just and lawful offsets, payments, and other credits.

8. The account on which Transworld files suit is denied because the amount Transworld claims is due is incorrect.

9. The account on which Transworld files suit is denied because Transworld charged SPB prices for the alleged services that are not in accordance with the parties' agreement and are unreasonable.

10. Specifically, the invoices Transworld relies on in support of its suit on a sworn account claim are not valid because: (1) the alleged services referenced in the invoices were not approved by SPB, (2) the invoices failed to specify locations where the alleged services were rendered or provided, (3) the invoices failed to specify who at SPB requested or approved the services that were allegedly rendered or provided by Transworld, (4) many of the invoices reflect charges for alleged services that are not reasonably priced for what was allegedly being provided, and (5) many of the invoices reflect charges that were billed to SPB under one category and then billed again to SPB under another category.

11. As such, Transworld's assertion that 'The foregoing amount is just and true and all just and lawful offsets, payments, and credits have been allowed,' is untrue."

MARIA DAWSON,
HUMAN RESOURCES DIRECTOR,
SPB HOSPITALITY, LLC

Sworn to and subscribed before me by _Maria Dawson_ on the 9 day of March, 2022.

Notary Public
In and For the State of Indiana

KALIKO BOLDEN
Notary Public, State of Indiana
Lake County
Commission Number NP0720350
My Commission Expires
May 16, 2027

2

# EXHIBIT B



# TRANSWORLD ADVERTISING, INC.

This Support Agreement is entered into and effective beginning January 1, 2021, for a period of 12 months, due for renewal on December 31, 2021, between SPB Holdings (Old Chicago, Logan's Roadhouse, Gordon Biersch, Rock Bottom & Specialty Brands), herein the "Client", and Transworld Advertising, Inc., herein the "Agency", regarding the provision of services as outlined below:

**Domain Name Renewals**
The Agency shall provide annual registration renewal in June of each year for the Client's domain names as follows: spbholdings.jobs, logans.jobs, logansroadhouse.jobs and oldchicago.jobs

**Website Hosting**
The Agency shall provide fully-managed, dedicated IP website hosting on its server for the Client's career websites. This Agreement creates no ownership, partnership, exclusivity or other rights, explicit or implied, between the Agency and Client in connection to the access and use of its server and resources, and the Agency shall retain full ownership of, and access to, its server in provision of this service.

**Pre-Paid Maintenance**
As part of this agreement, the Agency shall provide a total of 40 hours of Agency time for **3 career sites**, pre-paid towards the fulfillment of the following services:

- Career Site:
    - Site updates, additional pages, video add-ons, photo replacement/add-ons, etc. (redesign or skinning additional)
        - Time assessed to make changes and updates will include good faith efforts to assess and maintain ADA compliance in connection with the specific changes or updates being made.
        - It DOES NOT, however, include a re-scan or re-evaluation of the entire site and there is no guarantee that changes or updates made will not affect overall ADA compliance or that in any other areas of the career sites.
- Online Reporting Tool
    - Real Time Cost Per Hire / ROI Reports for all concepts separately and combined
    - Expenditures, List of Ordered Ads & Weekly Hourly Spend Tracker
    - Ensuring that all reporting functions as designed

- **\*Advanced analytics portal including ROI not included on 1/1/21. Cost = $4,500 / year ($375 / month). Can be re-added at any point in time and cost will be pro-rated\*** Portal includes:
  - o Hourly ROI by Market -
    *This allows for each concept to review Hourly & Manager ROI by __market__.*
  - o Source Effectiveness by Location & Position
    *Allows for us to judge source and location level ROI effectiveness*
  - o Year over Year Cost per Hire Comparison
  - o Monthly Cost per Hire Trends
  - o Year by Year ROI Comparison
  - o Hirebridge Data
    *This allows an analysis of current traffic & job board success over the selected time*
  - o Additional analytics reporting created / added during the duration of the agreement.
- Any additional services, as needed, including job feed development & maintenance and other technical services to support recruitment advertising goals,

**Software Licensing**

Licensor hereby grants to Licensee, for the term of this Agreement, a nonexclusive, non-assignable right and license to use its Career Site Software for powering advanced search functionality and integration with the Client's ATS on its career websites.  Agency will directly place and actively maintain the installation of its software on the Client's career websites.  This Career Site Software license shall be expressly limited to installation on the following websites: spbholdings.jobs, logans.jobs, logansroadhouse.jobs and oldchicago.jobs, and includes only the software features which are not the Client's intellectual property, including specifically:

- Proprietary back-end administration areas for use exclusively by the Agency in provision of services and the maintenance and management of the website(s)
- Integration software modules for the direct update and management of local databases from the ATS
- Local geocoded locations database and its admin editors, as well as admin editors designed for use by Agency for posting advertisements and fulfillment of other services as contracted through the Agency

It does NOT include the following, as they have been purchased by and are the intellectual property of the Client:

- Front-end website design, including HTML, CSS and JavaScript
- Basic iframe job search capabilities

No right or license is conveyed to the Licensee for use of the Software on any other website. Licensee is prohibited from making any copies, archival or otherwise, of the Software, and from the dissemination, distribution, reverse engineering, or use of the Software in any manner other than as described above.

**Software Maintenance and Upgrades**

a) As part of the licensed software granted to the Client as part of this Agreement, the Agency shall provide regular maintenance and upgrades to the licensed software as they are developed and released by the Agency.  Any improvements or modifications made by the Agency to its licensed Software shall be promptly provided to Licensee and shall be automatically included in this Agreement

at no additional cost to the Client. This includes any updates or modifications necessary to maintain proper interface and functionality between the hosted websites and Client's ATS.

b) Maintenance, upgrades and other changes to software, websites, or other components which are not included as part of the licensed software but instead are the Client's intellectual property, such as the front-end design and pages of the career sites, are the responsibility of the Client, and may be fulfilled by the Agency at additional cost, with pre-approval by the client, or as part of the pre-paid Agency time included as part of this agreement.

## Software Warranties

a) Licensor represents and warrants that to the best of its knowledge, the Software does not infringe on any valid rights of any third party.

b) Licensor warrants that the Software will perform in accordance with the specifications provided by Licensor to Licensee.

c) In the event of a claim by Licensee under this warranty, Licensor shall have the option to either repair or replace the Software. In the event that Licensor fails to repair or replace the Software within a reasonable period, Licensee's sole recourse shall be to terminate the Agreement and Licensor's sole obligation shall be to return any Licensee and Installation Fees paid by Licensee.

d) In no event shall Licensor be liable for any incidental, consequential, or punitive damages as a result of its performance or breach of this Agreement.

## ATS / Hirebridge Support Services

As part of this agreement, the Agency shall provide the following services:

- Job requisitions
    - o Open & close, as needed
    - o Refreshing jobs for recruiters either on request or on a semi-regular basis
    - o Bi-weekly monitoring of management systems to identify low flow reqs, old reqs and anything else requested by HR / Operations teams
    - o Refreshing hourly reqs of Cook & Server, that have 0 unviewed, that are greater than 60 days old to ensure flow on scrape partners like Snag, Indeed & Glassdoor
- For advertised roles
    - o Create all new requisitions for each position advertised
    - o Move all active candidates under 45 days old for each position advertised
    - o Disposition old candidates that are inactive for each position advertised
    - o Reformat & write ad copy for corporate positions / requisitions
    - o Close old requisitions for each position advertised
- Reporting as requested, not specifically covered under the Analytics agreement
    - o Reports for Operators and HR Teams as requested, such as:
        - ▪ Last time ads were run for all locations within a division
        - ▪ Recent applicant traffic for a restaurant by job board
        - ▪ Any others as needed
- Daily internal requisition reports to ensure all evergreens are live.
- **Monitor the total number of live requisitions to ensure that the Indeed Monthly Sponsorship program does not exceed the current tier.**
- Custom built job board feeds to include:
    - o Exclude jobs based on # of unviewed candidates
    - o Exclude jobs based on age of req

- o Customized job sourcing
- o Other factors, as needed / requested

## Confidentiality, Security and Indemnification

a) Agency will take all necessary and appropriate measures to protect the security and confidentiality of the Client.

b) Agency will implement all necessary and appropriate security measures on its server(s) and perform regular maintenance to the best of its knowledge to facilitate a secure computing environment.

c) In the event of a data breach, hack, or other compromise of Client's data which were not a result of Agency's negligence or willful misconduct, Client hereby waives, releases, and forever discharges Agency from all liabilities related to such compromise.

d) Licensor agrees to defend, indemnify, and hold Licensee, and its officers, directors, agents, and employees, harmless against all costs, expenses, and losses (including reasonable attorney fees and costs) incurred through claims of third parties against Licensee based on a breach by Licensor of any representation or warranty made in this Agreement as well as for any third-party claim for infringement of its intellectual property rights resulting from Licensee's use of the services or products provided by Licensor hereunder.

## Change in Services

If, during the term of this Agreement, the Client should require any additional websites, domain names, software licenses or other services provided in connection with this Agreement, these additional services will not fall under or be covered by the scope of the existing Agreement.  Any such changes shall require that this Agreement and terms within be revised to include these additional services, and agreed upon in writing by both parties.

## Cancellation Policy

Client may terminate this Agreement by providing thirty (30) days' prior written notice to Agency. In the event of termination, Client agrees that all Fees earned through the termination date will remain due and payable to Agency.

## Transfer Policy

In the event any concept of Client separates from or is sold by Client, the services provided under this Agreement shall go with the separation or sale of the concept, and shall continue through the expiration of this Agreement. Absent a transfer of these services or cancellation, Agency shall be paid in full by Client through the expiration of this Agreement for the value of services rendered or to be rendered to that concept as stated below.

This Agreement is considered an asset of Client and its individual concept, and shall be included in the calculation for valuation and sale of such concept.  Where a concept of Client separates from the group, or is acquired by another entity, the services of this Agreement pertaining to that concept shall continue in full force and effect until the expiration of this Agreement.  That separated or acquired concept shall be able to communicate its service needs with Agency pursuant to the terms of this Agreement as if it were Client.

Career Site Maintenance & Software License Agreement

**Effective on January 1, 2021 for 12 months – Expires December 31, 2021**

Maintenance will reoccur upon expiration of this agreement and the pricing will be determined with approval no less than 30 days prior to the end of the contract.

| Concept | Months | Career Site Hosting | Career Site Maintenance | Basic Analytics | ATS & Recruiting Support | TOTAL | Cost / Month |
|---------|--------|--------------------|-----------------------|----------------|------------------------|-------|-------------|
| Corp | 12 | $1,200.00 | $3,600.00 | - | - | $4,800.00 | $400.00 |
| Logan's | 12 | $1,200.00 | $3,600.00 | $900.00 | $5,400.00 | $11,100.00 | $925.00 |
| Old Chicago | 12 | $1,200.00 | $3,600.00 | $900.00 | $5,400.00 | $11,100.00 | $925.00 |
| GB | 12 | - | - | $900.00 | $3,600.00 | $4,500.00 | $375.00 |
| RB | 12 | - | - | $900.00 | $3,600.00 | $4,500.00 | $375.00 |
| Specialty | 12 | - | - | $900.00 | $3,600.00 | $4,500.00 | $375.00 |
| TOTAL | 12 | $3,600.00 | $10,800.00 | $4,500.00 | $21,600.00 | $40,500.00 | $3,375.00 |

Additional Terms:
**PAYMENT – Invoiced annually and accrued.** Invoice terms are due upon receipt, past-due after 30 days.

**Authorization:**
SPB Hospitality

Authorized by: _____ Print Name: _____ Date _12/30/20_
                      Signature

Transworld Advertising, Inc.

Authorized by: _____ Print Name: _____ Date _____
                      Signature